IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

JUSTIN JOHN MARK,

    Petitioner,

v.  Civ. No. 16-454 JAP/SCY

DAVID FAJARDO, and
ATTORNEY GENERAL OF THE
STATE OF NEW MEXICO,

    Respondents.

**PROPOSED FINDINGS AND RECOMMENDED DISPOSITION**

**THIS MATTER** is before the Court on Petitioner Justin John Mark's Amended Petition under 28 U.S.C. § 2254 for Writ of Habeas Corpus by a Person in State Custody, filed November 9, 2016. Doc. 12. The Honorable James A. Parker, Senior United States District Judge, referred this matter to me for entry of proposing findings and a recommended disposition. Doc. 43. Having considered the parties' submissions, the record, and the relevant law, I recommend denying Petitioner's claims and dismissing this case with prejudice.

**I. Factual Background and Procedural History**

On November 9, 2012, a jury convicted Petitioner Justin John Mark of first degree murder, second degree armed robbery, conspiracy to commit armed robbery, and tampering with evidence. Doc. 17-1, Ex. A. Petitioner's convictions stemmed from a May 29, 2011 incident at the home of Kevin Lossiah that resulted in Mr. Lossiah's death. Petitioner was sentenced to a term of life imprisonment plus three years. *Id.*

On January 16, 2013, Petitioner appealed his convictions to the New Mexico Supreme Court. Doc. 17-1, Ex. B. On April 13, 2015, the New Mexico Supreme Court affirmed Petitioner's convictions. Doc. 17-2, Ex. H; *see also* Doc. 17-2, Ex. I (Mandate issued May 11,

1

2015). On July 22, 2015, Petitioner filed a pro se petition for writ of habeas corpus in state district court. Doc. 17-2, Ex. L. On September 23, 2015, the state district court summarily dismissed the habeas petition on its merits. Doc. 17-2, Ex. N. On October 9, 2015, Petitioner filed a petition seeking certiorari review of his state habeas petition. Doc. 17-3, Ex. O. The New Mexico Supreme Court denied the petition by order on March 10, 2016. Doc. 17-3, Ex. P.

Petitioner filed the instant petition under § 2254 in this Court on May 18, 2016. Doc. 1. Upon initial review, the Court determined that Petitioner filed a mixed petition containing both exhausted and unexhausted claims. *See* Docs. 24, 26. The Court granted Petitioner's motion to voluntarily dismiss his unexhausted claim (Doc. 26 at 8), thereby leaving the following two exhausted claims in this case:

1. Petitioner's trial counsel was ineffective for failing to investigate Petitioner's alleged mental incompetence.

2. Although listed under his ineffective assistance of counsel claim, Petitioner also argues that it was error that "the doctor that testified [at his trial] was not the doctor that performed [Mr. Lossiah's] autopsy."

*See* Doc. 26 at 2, 8. The Court ordered Respondents to file a supplemental answer addressing these exhausted claims and to submit the state court record. *See* Doc. 26 at 8. The Court also allowed Petitioner to file a reply to Respondents' supplemental answer. On September 5, 2017, Respondents filed their supplemental answer as well as the state court record. Docs. 27, 28. Petitioner thereafter filed three supplemental reply briefs. Docs. 31, 34, 37. I now consider the merits of Petitioner's exhausted claims.

## II. Standard for § 2254 Habeas Petitions

The provisions of 28 U.S.C. § 2254(d), as amended by the Antiterrorism and Effective Death Penalty Act of 1996, 110 Stat. 1214 (AEDPA), govern this case. A petition for habeas corpus under § 2254 attacks the constitutionality of a state prisoner's conviction and continued detention. A federal court cannot grant habeas relief pursuant to § 2254(d) with respect to any claim adjudicated on the merits by a state court unless the petitioner's state-court proceeding:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

§ 2254(d). "Even if a state court resolves a claim in a summary fashion with little or no reasoning, [federal courts] owe deference to the state court's result." *Paine v. Massie*, 339 F.3d 1194, 1198 (10th Cir. 2003). The standard is "highly deferential" to state courts, and the Supreme Court has added that it is "difficult to meet," as it "demands that state-court decisions be given the benefit of the doubt." *Cullen v. Pinholster*, 131 S. Ct. 1388, 1398 (2011) (citing *Harrington v. Richter*, 131 S. Ct. 770, 786 (2011)); *Woodford v. Visciotti*, 537 U.S. 19, 24 (2002) (per curiam)); *see also Black v. Workman*, 682 F.3d 880, 891 (10th Cir. 2012) ("Under [AEDPA,] a federal court in a § 2254 proceeding must be exquisitely deferential to the state court's resolution of the [petitioner's] claims.").

The term "clearly established Federal law" in § 2254(d)(1) "refers to the holdings, as opposed to the dicta, of [the Supreme] Court's decisions as of the time of the relevant state-court decision." *Williams v. Taylor*, 529 U.S. 362, 412 (2000). A state court decision is "contrary to" Supreme Court precedent if it "applies a rule that contradicts the governing law set forth in [those] cases." *Id.* at 405. The Supreme Court has interpreted the term "contrary to" as meaning,

*inter alia*, "diametrically different" and "opposite in character and nature." *Id*. at 406. Therefore, habeas relief under § 2254 may be granted only where the state court "applies a rule that contradicts the governing law set forth in [Supreme Court] cases," or if it "confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from [that] precedent." *Price v. Vincent*, 538 U.S. 634, 640 (2003). Significantly, it is unnecessary for the state court to cite applicable Supreme Court cases or even to be aware of such cases, "so long as neither the reasoning nor the result of the state-court decision contradicts [that precedent]." *Early v. Packer*, 537 U.S. 3, 8 (2002).

A state court decision makes an "unreasonable application" of Supreme Court precedent if it "identifies the correct governing legal principle from th[e] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Williams*, 529 U.S. at 413. However, "[i]t is not enough that a federal habeas court, in its independent review of the legal question, is left with a firm conviction . . . that the relevant state court decision applied clearly established federal law erroneously or incorrectly." *Lockyer v. Andrade*, 538 U.S. 63, 75-76 (2003) (internal quotation marks and citations omitted). "Rather, that application must be objectively unreasonable." *Id.* at 76.

Pursuant to AEDPA, state court findings of fact are "presumed to be correct." 28 U.S.C. § 2254(e)(1). Accordingly, petitioners challenging a state court's decision based on an unreasonable determination of the facts in light of the evidence presented, *see* § 2254(d)(2), must show by clear and convincing evidence that the determination was factually erroneous. *See Miller-el v. Dretke*, 545 U.S. 231, 240 (2005).

Lastly, where state courts have adjudicated a claim on its merits, federal courts are limited to reviewing the record as it stood before the state courts. *Pinholster*, 131 S. Ct. at 1398

4

(citing § 2254(d)(1)). That is, evidentiary hearings are not permitted in federal court on claims that the state courts decided on their merits. *Id.* at 1398-99; *Littlejohn v. Trammell*, 704 F.3d 817, 857 (10th Cir. 2013). "'Adjudicated on the merits' [means] a decision finally resolving the parties' claims, with res judicata effect, that is based on the substance of the claim advanced, rather than on a procedural, or other ground." *Wilson v. Workman*, 577 F.3d 1284, 1308 (10th Cir. 2009) (internal quotation marks omitted). Thus, summary decisions, even those completely devoid of any reasoning at all, can constitute decisions "on the merits" for purposes of AEDPA. *Richter*, 131 S. Ct. at 784.

### III. ANALYSIS

### Claim 1: Ineffective Assistance of Counsel

*A. Legal Standard*

"Claims of ineffective assistance of counsel are evaluated under the two-prong approach established by the Supreme Court in *Strickland v. Washington*, 466 U.S. 668, 687-88, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984)." *Simpson v. Carpenter*, 912 F.3d 542, 2018 WL 6802636, at *31 (10th Cir. 2018). To establish an ineffective assistance of counsel claim, Petitioner "must show both that his counsel's performance 'fell below an objective standard of reasonableness' *and* that 'the deficient performance prejudiced the defense.'" *Id*. (internal citations omitted). "When evaluating whether counsel's performance was deficient, the question is whether the representation amounted to incompetence under prevailing professional norms, not whether it deviated from best practices or most common custom." *Id*. (internal citations and quotation marks omitted). "Judicial review under this standard is highly deferential, and we strongly presume that an attorney acted in an objectively reasonable manner and that an attorney's challenged conduct *might* have been part of a sound trial strategy." *Id*. (internal citations and

5

quotation marks omitted). "Furthermore, we must judge the reasonableness of counsel's challenged conduct on the specific facts of the case viewed as of the time of counsel's conduct." *Id*. (internal citations, alterations, and quotation marks omitted).

"Even if counsel performed in a constitutionally deficient manner, [Petitioner] is not entitled to relief unless he can prove actual prejudice." *Id*. To demonstrate prejudice, Petitioner must show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id*. (internal citation omitted). "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* (internal citation omitted).

"Review under both AEDPA and *Strickland* is highly deferential, and when the two apply in tandem, review is doubly so." *Id*. at *32 (internal citations omitted). "When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard." *Id*. (internal citation omitted).

B. *Petitioner's Claim of Ineffective Assistance of Counsel Based on Mental Incompetency*

In his § 2254 petition, Petitioner contends that his trial attorney was ineffective for failing to investigate Petitioner's alleged mental incompetence at the time of the underlying incident as well as at the time of his trial. Doc. 12 at 5; *see also* Doc. 37 at 3. Petitioner asserts that his attorney "refused to look through [his] background of [] being mentally incompetent", including that he had "been determined to be disabled by both the State of New Mexico and federal (SSI)". Doc. 12 at 5. Petitioner asserts that he was unable to "assist in his own defense due to his incompetence." *Id*. In his supplemental reply briefs, Petitioner has submitted documents that he asks this Court to use "as evidence for mental incompetency or mental instability". *See* Docs. 31,

6

34, 37. In addition, Petitioner alleges in his supplemental replies that he told his attorney he was receiving social security benefits and going to mental health counseling at the time of the incident underlying his convictions. Doc. 37 at 3. Petitioner also claims he told his attorney that he is "slow thinking", "forget[s] what [he is] talking about", "cannot speak right" and has "difficulty thinking". *Id*. Lastly, Petitioner asserts that he asked his attorney to review his school records which allegedly substantiated his mental health issues, but that his attorney apparently did not do so. *Id*. Petitioner requests an evidentiary hearing on this issue and asks the Court to appoint counsel to represent him. Doc. 34 at 1.

Petitioner raised his ineffective assistance of counsel claim for the first time in his state habeas proceeding. The court rejected Petitioner's claim on the ground that Petitioner had failed to show that his attorney's performance was deficient. The court stated:

> Petitioner also claims that trial counsel should have raised the Petitioner's competency to stand trial, asserting that he told counsel at the beginning that "I am mentally impotent." (See petition page 7.) A defense attorney must have evidence that raises a reasonable doubt as to a defendant's competency to stand trial. The mere assertion by the Petitioner that he was, presumably, incompetent is not enough. Petitioner's asserted "slow speaking," inability to "speak right," and receipt of social security disability income do not provide the evidence that would support a legitimate issue as to Petitioner's competency. Trial counsel cannot therefore be said to have performed deficiently for failing to raise the issue.

Doc. 17-2, Ex. N at 2-3. Although the court did not identify *Strickland* as the controlling legal authority for Petitioner's ineffective assistance claim, it applied the *Strickland* standard and rejected Petitioner's ineffective assistance claim on the basis of mental incompetency under *Strickland*'s deficient performance prong.

On habeas review, counsel's "decision not to investigate must be directly assessed for reasonableness in all the circumstances, applying a heavy measure of deference to counsel's judgments." *Strickland*, 466 U.S. at 691. A defendant is mentally competent to stand trial if he

7

"has sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding—and [if] he has a rational as well as factual understanding of the proceedings against him." *Dusky v. United States*, 362 U.S. 402 (1960). "Defense counsel is often in the best position to determine whether a defendant's competency is questionable." *Bryson v. Ward*, 187 F.3d 1193, 1201 (10th Cir. 1999). As Respondents point out, under New Mexico law, a determination of a defendant's competency must be made "[w]henever it appears that there is a question as to" it. Doc. 27 at 13 (citing NMSA 1978, § 31-9-1 (1993)). "When a defendant . . . asserts the doubtfulness of that competency, the assertions must be substantiated." *State v. Najar*, 1986-NMCA-068, ¶ 12, 724 P.2d 249.

I recommend finding that Petitioner is not entitled to federal habeas relief based on his ineffective assistance claim. First, Petitioner has not shown that counsel was constitutionally deficient in failing to investigate or raise as an issue his mental competency because, as the state court noted in its ruling in the state habeas proceeding, the state record does not support Petitioner's claimed mental incompetency. In this case, Petitioner claims a history of mental illness. Further, he alleges that he is of low intelligence, "slow thinking", "forget[s] what he is talking about", "cannot speak right", has "difficulty thinking", and that he received disability benefits. But even if his allegations are true, Petitioner's history of mental illness, speech and learning disabilities, and receipt of disability benefits does not equate to mental incompetency at the time of his trial. He offers nothing—apart from his conclusory assertions as to his mental incompetence at the time of the underlying incident and at trial—that he lacked mental competency during his criminal proceedings. *See Lafferty v. Cook*, 949 F.2d 1546, 1561 (10th Cir. 1991) ("[N]ot all people who have a mental problem are rendered by it legally incompetent."); *see United States v. Mackovich,* 209 F.3d 1227, 1233 (10th Cir. 2000) (the Tenth

Circuit has long recognized that a defendant is not necessarily incompetent simply because he suffers from a mental disorder); *Miles v. Dorsey,* 61 F.3d 1459, 1474 (10th Cir. 1995) ("Petitioner's history of mental problems, low intelligence, psychotropic medication, and substance abuse do not establish that he was incompetent to plea.").

Nothing indicates that Petitioner was incompetent to stand trial under the test defined in *Dusky*. Indeed, nothing in the record indicates that Petitioner was anything other than lucid at the time of the trial, or that he did not understand the charges he was facing. In light of the circumstances, I find that it was not completely unreasonable that counsel did not investigate Petitioner's competency to stand trial.

In the course of briefing for his § 2254 petition, Petitioner now has submitted documents allegedly concerning his mental health issues. The documents consist largely of school records, individual educational plans, and social security disability statements. The documents, however, are not chronologically pertinent because they pertain to years before the underlying incident and the criminal proceedings. In addition, none of the documents include any form of competency determination. Lastly, these documents were not part of the state court record, and it is well-established that this Court's review is limited to the record that was before the state court when it adjudicated Petitioner's ineffective assistance of counsel claim. *See Pinholster,* 131 S.Ct. at 1398. In other words, "review under § 2254(d)(1) focuses on what a state court knew and did." *Id*. at 1399. Thus, these documents do not change my recommendation.

I find that the state court's decision to deny habeas relief based on Petitioner's ineffective assistance claim does not contravene or unreasonably apply clearly established federal law. Nor is it based on an unreasonable determination of the facts in light of the evidence presented.

Accordingly, I recommend concluding that Petitioner's ineffective assistance claim based on his mental health is meritless and does not provide grounds for federal habeas relief.

**Claim 2: Testimony of Forensic Pathologist**

Petitioner argues that the trial court's admission of forensic pathologist Dr. Ross Zumwalt's testimony violated his Sixth Amendment right of confrontation. *See* Doc. 12 at 5. Petitioner specifically argues that it was error that "the doctor that testified [at his trial] was not the doctor that performed [Mr. Lossiah's] autopsy." *Id*.

A. *Legal Standard*

The Sixth Amendment of the United States Constitution guarantees an individual accused of a criminal offense the right "to be confronted with the witnesses against him." U.S. Const. amend. VI. The "main and essential" purpose of the Sixth Amendment's Confrontation Clause "is to secure for the opponent the opportunity of cross-examination." *Delaware v. Van Arsdall*, 475 U.S. 673, 678 (1986) (citation omitted and emphasis removed). In *Crawford v. Washington*, 541 U.S. 36 (2004), the Supreme Court held that the Confrontation Clause bars the admission of "testimonial hearsay" unless the declarant is shown to be unavailable to testify and the defendant had an earlier opportunity to cross-examine the declarant. *Crawford*, 541 U.S. at 51-54. A defendant's confrontation rights are implicated by the admission of testimonial statements against the defendant, however, only when they are admitted to establish the truth of the matter asserted in the statement. *See id*. at n.9 (explaining that the Confrontation Clause "does not bar the use of testimonial statements for purposes other than establishing the truth of the matter asserted.").

In *Melendez-Diaz v. Massachusetts*, 557 U.S. 305 (2009), and *Bullcoming v. New Mexico*, 564 U.S. 647 (2011), the Supreme Court ruled that scientific reports were considered

10

"testimonial hearsay" and could not be used as substantive evidence against a defendant unless the analyst who prepared and certified the report was subject to confrontation. In each case, the report at issue "contain[ed] a testimonial certification, made in order to prove a fact at a criminal trial." *Bullcoming*, 564 U.S. at 657. In *Williams v. Illinois*, however, the Supreme Court confirmed that the Confrontation Clause is not implicated when one expert gives an opinion which uses, as "basis evidence," an out-of-court "testimonial statement" which has not been admitted into evidence and subject to cross-examination. *Williams v. Illinois*, 132 S. Ct 2221, 2234-44 (2012).

   B. *Petitioner's Claim*

During Petitioner's trial, the autopsy report of Mr. Lossiah was not introduced into evidence. My review of Dr. Zumwalt's trial testimony is consistent with the New Mexico Supreme Court's summary of his testimony in its decision:

> The district court permitted Dr. Zumwalt to testify and accepted him as an expert in forensic pathology. Dr. Zumwalt testified that "he reviewed the information . . . surrounding the circumstances of the death and reviewed the autopsy photographs" to formulate his opinions regarding the cause and manner of Lossiah's death. Dr. Zumwalt referred to various photographs during his testimony, and the district court admitted these photographs into evidence without objection. Dr. Zumwalt testified that Lossiah sustained fractures of the skull, bleeding in and around the brain, and brain swelling. Dr. Zumwalt concluded that Lossiah died from blunt force injuries to the head. Dr. Zumwalt also testified that injuries on the left side of Lossiah's chest were consistent with a series of impacts from a long, narrow object, like a rod, and that Lossiah had a bruised forearm and a deformed index finger, which may have been broken.

Doc. 17-2 at 7.

After setting forth the rule in *Crawford*, as applied by the state court in previous decisions, the New Mexico Supreme Court held that Petitioner's confrontation rights were not violated because "the State did not introduce any testimonial, out-of court statements against Defendant. Dr. Zumwalt relied on raw data, the autopsy photographs, to arrive at his own

11

independent opinions about Lossiah's injuries and the cause and manner of Lossiah's death. Dr. Zumwalt did not repeat any subjective observations made by the pathologist who performed the autopsy. Although Dr. Zumwalt admitted on cross-examination that he reviewed 'the entire file' in preparation for his testimony, he neither referred to nor quoted from the autopsy report while testifying, and the State did not proffer the autopsy report as evidence." Doc. 17-2, Ex. H at 9-10.

In his § 2254 petition, Petitioner makes no more than a conclusory assertion that it was error for the trial court to admit Dr. Zumwalt's testimony because he did not perform Lossiah's autopsy. I disagree and recommend finding that the New Mexico Supreme Court ruled in accordance with clearly established federal law when it held that Dr. Zumwalt's testimony did not violate Petitioner's rights under the Confrontation Clause. The trial court did not contravene or unreasonably apply clearly established federal law when it allowed Dr. Zumwalt to testify. Furthermore, because Petitioner does not challenge any of the state court's factual determinations surrounding Dr. Zumwalt's testimony, there is no basis for this Court to find that the state court's decision is based on an unreasonable determination of the facts. In sum, I recommend deferring to the state court's ruling and finding that Petitioner is not entitled to habeas relief on this claim.

## IV. RECOMMENDATION

For the reasons set forth herein, I recommend that the Court deny Petitioner's § 2254 petition and dismiss this action with prejudice. I further recommend that the Court deny a certificate of appealability.

_____
UNITED STATES MAGISTRATE JUDGE

**THE PARTIES ARE FURTHER NOTIFIED THAT WITHIN 14 DAYS OF SERVICE** of a copy of these Proposed Findings and Recommended Disposition they may file written objections with the Clerk of the District Court pursuant to 28 U.S.C. § 636(b)(1). **A party must file any**

**objections with the Clerk of the District Court within the fourteen-day period if that party wants to have appellate review of the proposed findings and recommended disposition. If no objections are filed, no appellate review will be allowed.**